IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| RUSSELL BEARDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:08cv864 (JCC) |
| | ) | |
| | ) | |
| JOHN POTTER, POSTMASTER | ) | |
| GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant John Potter's (Defendant's) Motion for Summary Judgment. For the following reasons, the Court will grant the motion.

### **I. Background**

The undisputed facts are as follows. Beginning in 1995, Plaintiff failed to maintain a regular work schedule and was absent without leave (AWOL) to such an extent that USPS eventually imposed disciplinary action.

On December 8, 1995, Plaintiff's supervisor advised him that his attendance record had become unacceptable. Between that date and February 1996, Plaintiff called in sick four times, was late to work three times, and failed to show up for work without explanation once. On March 2, 1996, Plaintiff failed to show up for work without explanation until March 25.

1

He was AWOL on yet another occasion before the USPS issued a warning letter to him for "Unsatisfactory Attendance/ Failure to Maintain a Regular Schedule" on May 10, 1996.  From May 16, 1996, to January 9, 1997, Plaintiff was late to work fifteen times, once by over two hours, and had four unscheduled sick absences.

On January 29, 1997, the USPS issued Plaintiff a seven-day suspension for his unsatisfactory attendance and repeated failure to maintain a regular schedule.

On August 21, 1998, Plaintiff was again AWOL.  The USPS issued a second warning letter for unsatisfactory attendance to him.  In the months following, Plaintiff incurred five unscheduled absences, in addition to the eight he had taken previously in the year, two of which were without leave.  He blamed these absences on having a bad attitude since receiving the warning letter.

On December 17, 1998, a pre-disciplinary hearing was held and the USPS imposed a second seven-day suspension on Plaintiff for excessive lateness and absences.  On December 22, 1998, the USPS informed him that his next scheduled pay increase would be withheld as a result of his unsatisfactory attendance and job performance.

From January to May 1999, Plaintiff incurred six days of unscheduled sick leave, and on May 10, 1999, he was AWOL.  On

2

June 4, he called his supervisor at 7:45 a.m. to request leave for the day.  His supervisor, unable to find a replacement, called him back thirty minutes later to demand that he report for duty, and Plaintiff verbally assented.  An hour later he called a second time to say that he would not be showing up.

At this point, the USPS imposed a third suspension, this time for a period of fourteen days.  Plaintiff responded to this suspension by filing a grievance with his union.  Ultimately, the union determined that Plaintiff's complaints had "no reasonable likelihood of success" and deemed the grievance closed.

From July to September 1999, Plaintiff took unscheduled sick leave four times, was AWOL twice, and on one occasion was late to work by over two hours.

On August 6, 1999, his supervisor asked him to sign leave slips for the two AWOL incidents, on July 23 and 30, and for two unscheduled sick leave absences, on July 26 and 27.  Defendant refused.  When asked to provide the names of the people that he claimed to have called on July 23 and 30 to excuse his failure to report, he did not identify anyone.

On September 2, 1999, Plaintiff was two hours and twenty minutes late to work and signed a leave slip acknowledging this.  On September 13, 1999, Plaintiff attempted to submit a leave slip to his supervisor and indicated that he was suffering

3

from "on the job stress."  His supervisor responded by handing him the appropriate Department of Labor (DOL) claim form for work-related illnesses, a CA-2.  On September 14, Plaintiff attempted to report for duty, but his supervisor informed him that because he had claimed leave the day prior due to work-related stress, he could not return to work without being cleared by a doctor.[1]

On September 14, 1999, the USPS determined that Plaintiff should be removed from service due to his unabating and excessive problems with attendance, citing both his most recent and serious infractions as well as his singular history of warning letters and suspensions.  Plaintiff was notified of this determination on or around September 18, 1999.  The termination went into effect thirty days later.

A CA-2 is a form issued by DOL that initiates a claim for federal workers' compensation benefits when the employee has suffered from an occupational disease, which may include emotional conditions such as stress disorders developed during federal employment.  On his CA-2, Plaintiff indicated that the "disease or illness" underlying his workers' compensation claim was "stress [and] depression."  He also noted his back and knee

---

[1] According to Defendant's Undisputed Facts, the USPS's Employee and Labor Relations Manual states that employees seeking to report for duty after an absence due to mental or nervous conditions must submit medical clearance documentation from their physician prior to returning to work.

4

injuries from 1996 and 1997, although a CA-2 applies only to occupational diseases or illnesses, not traumatic injuries.

Through his attorney, Plaintiff submitted the CA-2 to DOL's Office of Workers' Compensation Programs ("OWCP"). Plaintiff also submitted a letter from his doctor in support of his claim. The letter states that Plaintiff's "problems revolve around, primarily, alcoholism and depression." The doctor noted that a physical examination undertaken in the summer of 1999 was "unremarkable for this young man," and mentioned a knee injury from 1996 which occasionally bothered him but did not prevent his mobility.

On July 8, 2002, after investigating Plaintiff's alleged occupational disease, the OWCP District Office denied his workers' compensation claim. Plaintiff challenged this decision and requested a formal hearing before the OWCP. On January 29, 2003, a hearing was held and Plaintiff described in detail his knee, back, and emotional conditions. The USPS was neither present at the OWCP hearing nor involved with the workers' compensation claims adjudication. The USPS offered no comment with respect to the OWCP hearing transcript, despite receiving a copy to review.

On May 1, 2003, the OWCP issued a decision stating that Plaintiff "ha[d] not met his burden in establishing that he sustained an emotional condition in the performance of duty." In

regard to Plaintiff's 1996 and 1997 injuries, it noted that these previous injury claims were retired to the Federal Records Center and that the District Office "failed to provide the status of these claims."  It instructed that Office "to obtain the claims and advise [Plaintiff] of any ongoing benefit entitlement after performing such development deemed necessary."[2]

Plaintiff also filed four EEO complaints between 1997 and 1999.  In June 1997 he filed an EEO complaint alleging race and sex discrimination.  In June 1998 the Administrative Judge (AJ) issued a discovery order with an October 15, 1998 deadline, advising the parties that failure to comply with the order could result in sanctions, including dismissal.  Plaintiff did not respond.  Over a year later, the AJ dismissed Plaintiff's complaint for his failure to respond to the discovery order and to provide an affidavit to the EEO investigator, as requested, during the formal investigation of his complaint.  Plaintiff appealed and the EEOC affirmed this decision.

In June 1999 Plaintiff filed a second EEO complaint, alleging race discrimination and retaliation for prior EEO activity based on five acts by his employer, all related to leave requested by Plaintiff or suspensions imposed by the USPS.  The EEOC dismissed the complaint because it was untimely filed.

---

[2] There are no facts on the record showing what action, if any, was taken.

On November 1, 1999, Plaintiff filed a third EEO complaint alleging that the USPS committed race discrimination and retaliation when his supervisor asked him to sign four AWOL and unscheduled leave slips on August 6, 1999.

On November 30, 1999, Plaintiff filed a fourth EEO complaint, this time alleging race discrimination, disability discrimination, and retaliation.  Of the twelve separate allegations, the USPS dismissed all but four as untimely and as identical to previously-filed claims.  The allegations accepted for investigation were: (1) on September 2, 1999, the USPS charged him as late to work; (2) on September 13, 1999, the USPS refused to allow him to work unless he signed a late slip, and when he sought to sign a leave slip to go home, the USPS gave him a CA-2 form; (3) on September 14, 1999, the USPS told him he could not report to duty without a doctor's release; and (4) on September 18, 1999, the USPS notified him of his removal.

Plaintiff never filed an EEO complaint alleging disability discrimination by the USPS.

On March 24, 2000, the agency consolidated Plaintiff's third and fourth EEO complaints.  On April 27, 2000, Plaintiff received the EEO investigator's request for an affidavit to verify his claims.  The letter stated that a failure to respond within fifteen days "may result in dismissal of your complaint in accordance with [29 C.F.R. § 1614.107(a)(7)]."  Plaintiff

7

responded within fifteen days stating that he was unable to comply with the affidavit request because of a family emergency. He requested additional time to comply and stated that he would do so by June 1, 2000.  Plaintiff did not respond by June 1 or at any time thereafter.

In April 2002 the EEOC found the matter to be a "mixed case" under 29 C.F.R. § 1614.302(d) that it lacked jurisdiction to hear.  It dismissed the case, instructing that it be reprocessed and submitted as a mixed-case complaint before the Merit Systems Protection Board ("MSPB").  After receiving Plaintiff's file from the EEOC, however, the MSPB determined that the EEOC had been in error and that the case was not properly before it.  The MSPB AJ dismissed the complaint, and in November 2002 the full MSPB denied Plaintiff's petition to review that decision.

Plaintiff then returned to the EEOC and requested a hearing before an EEOC AJ.  In July 2005 the case was accepted by the AJ and discovery commenced.  Plaintiff issued his discovery requests to the USPS on July 26, 2005; it responded on September 6.  The USPS issued its discovery requests to Plaintiff on July 21, 2005; Plaintiff failed to respond.  The USPS filed a motion to compel Plaintiff's response; the AJ granted it on October 11, 2005 and required Plaintiff to respond to the USPS's request by October 24, 2005.  That order noted that any party's failure to

8

comply with the order could subject them to sanctions, including dismissal for failure to prosecute.

On October 24, 2005, Plaintiff responded by letter to the AJ, requesting more time to respond because he was in the midst of obtaining additional information.  Plaintiff never submitted any additional information.  On July 5, 2006 the AJ dismissed the complaint from the hearings process and remanded it for a Final Agency Decision because of Plaintiff's complete failure to respond to either the discovery requests or the AJ's Order compelling his response.  The AJ also found, in the alternative, that the USPS was entitled to judgment as a matter of law.  On August 17, 2006, the USPS issued a final agency decision fully implementing the decision of the AJ.  The EEOC affirmed this decision, on both bases, on May 29, 2008.

Plaintiff commenced the present civil action on August 21, 2008.  Defendant moved for summary judgment on December 19, 2009.  Plaintiff has not responded.  The Court held a hearing on Defendant's motion on February 6, 2009.  Plaintiff did not appear.  This matter is currently before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby,*

9

*Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* (quotation omitted).  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

In addition, complaints filed by *pro se* plaintiffs are construed more liberally than those drafted by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Khozam v. LSAA, Inc.*, 2007 WL 2932817 at *3 (W.D. N.C. Oct. 5, 2007).  While a court is not expected to develop tangential claims from scant assertions in a complaint, if a *pro se* complaint contains potentially cognizable claims, a plaintiff should be allowed to particularize these claims.  *Treadwell v. Murphy*, 878 F. Supp. 49, 51-52 (E.D. Va. 1995) (citing *Beaudett v. City of Hampton*,

10

775 F.2d 1274 (4th Cir. 1985); *Coleman v. Peyton*, 340 F.2d 603,

604 (4th Cir. 1965)).

## III. Analysis

Plaintiff appears to bring four claims against

Defendant.  First, he alleges race discrimination, disability

discrimination, and retaliation (for prior Equal Employment

Opportunity ("EEO") activity) in the following agency actions:

(a) August 6, 1999: asking him to sign absent-without-leave

(AWOL) and unscheduled leave slips for absences in July

1999; (b) September 2, 1999: charging him as late to work; (c)

September 13, 1999: asking him to sign a late slip and

allegedly telling him that failure to do so would prevent

him from being allowed to work; and then, when he

attempted to file a leave slip to go home, handing him a

CA-2 workers' compensation claim form; (d) September 14, 1999:

telling him that he could not work without a doctor's release;

and (e) September 18, 1999: notifying him of his termination,

effective within thirty days of receipt of the notification.

Compl. at 1-2.

Second, Plaintiff alleges that the USPS committed

further disability discrimination in October 1996 and August

1997 when it denied him accommodation, treatment, and

rehabilitation and ordered him to return to work after he injured

his back and knee.  *Id.* at 7 ¶¶ 1-2.

11

Third, Plaintiff alleges that the agency retaliated against him by (a) failing to comply with a May 2003 "directive" to advise him of potential workers' compensation benefits issued by the DOL and (b) denying him "continuation of pay" following his alleged placement on workers' compensation in September 1999. *Id.* at 8 ¶ 3.

Fourth, he alleges that his rights under the rural carriers' union agreement were violated when he was denied union representation at a July 2, 1999, disciplinary hearing. *Id.* at 8 ¶ 4. The Court will address each of Plaintiff's four claims in turn.

A.   Claim One

Plaintiff claims that the USPS retaliated and discriminated against him on the basis of his disability and his race when it took the following actions: (1) August 6, 1999: asking him to sign absent-without-leave (AWOL) and unscheduled leave slips for four absences that occurred in July 1999; (2) September 2, 1999: charging him as late to work; (3) September 13, 1999: asking him to sign a late slip in order to work and then, when he attempted to file a leave slip to go home, handing him a CA-2 workers' compensation claim form; (4) September 14, 1999: telling him that he could not report to work without a doctor's release; and (5) September 18, 1999: notifying him of his termination, effective thirty days later. Compl. at 1-2.

12

Defendant argues that he is entitled to summary judgment on this claim for two independent reasons.  First, the claims are unexhausted because plaintiff failed to cooperate with and thus avail himself of the administrative remedies that Congress established for federal employment discrimination cases.  Second, and in the alternative, Plaintiff's excessive attendance misconduct constitutes a legitimate, nondiscriminatory, and non-retaliatory reason for the agency's actions.

1.  *Failure to Exhaust Administrative Remedies*

Title VII makes it unlawful for both private and federal employers to discriminate against employees on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  It establishes an extensive administrative system, implemented through the United States Equal Employment Opportunity Commission (EEOC), and the right to file a civil action to resolve these discrimination disputes.  *Id.* at §§ 2000e-16, 2000e-5.  The administrative procedures "reflect[] a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes."  *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000) (citation omitted).

The federal regulations implementing these procedures require a person who believes that he or she has been discriminated against to consult a counselor within 45 days of

13

the alleged discrimination to attempt to resolve the matter informally.  29 C.F.R. § 1614.105(a).  If the matter cannot be resolved, the complainant may file a formal complaint.  *Id.* at § 1614.106.  The complainant may then appeal to the EEOC or bring suit in federal court.  *Id.* at § 1614.110.

The regulations also require an employee who has filed an EEO complaint to "produce such documentary and testimonial evidence as the [EEO] investigator deems necessary."  29 C.F.R. § 1614.108(c)(1).  A party who "fail[s] without good cause shown to respond fully and in timely fashion to requests for documents, records, comparative data, statistics, affidavits, or the attendance of witness(es)," may be subject to the following adverse actions:

> (i) Draw an adverse inference that the requested information . . . would have reflected unfavorably on the party refusing to provide the requested information;

> (ii) Consider the matters to which the requested information or testimony pertains to be established in favor of the opposing party;

> (iii) Exclude other evidence offered by the party failing to produce the requested information or witness;

> (iv) Issue a decision fully or partially in favor of the opposing party; or

> (v) Take such other actions as it deems appropriate.

*Id.* at § 1614.108(c)(3)(i)-(v).  The same requirements apply when the EEOC has appointed an AJ to conduct the investigation.  *Id.*

at § 1614.109(a) and (f).

In order to bring a civil suit against the federal government for Title VII violations, a federal-employee plaintiff must first exhaust his administrative remedies. *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (citing 42 U.S.C. § 2000e-5(f)(1))("Only after these procedures have been exhausted, and the plaintiff has obtained a 'right to sue' letter from the EEOC, may he or she bring a Title VII action in court."); *see also Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976); *Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004).

Exhaustion includes "follow[ing] through on the appropriate administrative steps outlined [in the Code of Federal Regulations]," and satisfying "the relevant administrative time deadlines." *Mayfield v. Meese*, 669 F. Supp. 1123, 1126 (D. D.C. 1987); *see also Woodard v. Lehman*, 717 F.2d 909, 914 (4th Cir. 1983); *Austin v. Winter*, 286 Fed. Appx. 31, 36 (4th Cir. 2008) (unpublished).

In this case, it appears that Plaintiff satisfied the relevant filing deadlines for his first claim - regarding the USPS's actions on August 6, September 2, September 13, and September 18, 1999.  After filing the appropriate complaints, however, Plaintiff utterly failed to participate in the investigation process before the EEO counselor or the AJ.  Def.'s Ex. 2 at 1-3.  He further failed to respond to the USPS's Motion

15

to Compel his responses and the AJ's Order granting that motion (Order). *Id.* The Order warned Plaintiff that it would dismiss his complaint from the hearings process if he failed to respond. *Id.* at 2-3. Finally, one year from the beginning of the discovery process and nine months after it entered the Order, the AJ dismissed Plaintiff's complaint for failure to prosecute and, in the alternative, because the USPS was entitled to judgment as a matter of law. *Id.* at 3.

The Court finds that Plaintiff failed to exhaust his administrative remedies on these claims. He did not pursue his complaint in good faith throughout the administrative process or comply with the applicable regulations and orders designed to investigate his claims.[3] Construing all the relevant facts in the light most favorable to Plaintiff, the Court finds that there is no genuine dispute of material fact and summary judgment on Claim One in favor of Defendant is warranted.

2.   *Failure to State a Prima Facie Case of Discrimination*

Defendant argues, in the alternative, that Plaintiff has not made a prima facie case of discrimination. The AJ noted that Plaintiff "presents nothing more than his bare assertion that he was a victim of discrimination." Def.'s Ex. 2 at 11. It found that assertion, without more, "insufficient to raise a

_____

[3] Plaintiff's pattern of filing a complaint and then failing to pursue that complaint has repeated itself in Plaintiff's other EEO complaints, *see* Def.'s Ex. 16, and in the pending action.

16

genuine issue of material fact that the [USPS]'s disciplinary actions taken concerning his attendance problems were motivated by discriminatory or retaliatory animus." *Id.* (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)).

Defendant also asserts that Plaintiff failed to identify a similarly-situated employee who was treated differently than him by the USPS. The AJ specifically addressed the comparators that Plaintiff did proffer and found that they were not treated differently than he was. *Id.* at 11-13; Def.'s Ex. 4 at 8-10. For example, it noted that his comparators either missed work due to regular, not unscheduled, sick leave (e.g., Jack Diehl on August 6, 1999, Def.'s Ex. 4 at 9), or were asked (like plaintiff) to sign leave slips acknowledging their lateness (e.g., Jack Diehl, Rick Ellis, and Gustavo Galindo on September 13, 20, and 24, 1999, Def.'s Ex. 4 at 10). *See also* Def.'s Ex. 2 at 11-13.

Based on the evidence on the record, the Court finds, in the alternative, that Plaintiff's allegations fail to state a prima facie case for discrimination. There is no genuine dispute of material fact regarding whether the USPS took an adverse employment action against Plaintiff for a discriminatory reason and the Defendant is thus entitled to Summary Judgment on Claim One for this reason as well.

C.   <u>Claim Two</u>

Claim Two alleges that the USPS discriminated against him on the basis of his disability in October 1996 and August 1997 when it denied him accommodation, treatment, and rehabilitation and ordered him to return to work after he injured his back and knee.  *Id.* at 7 ¶¶ 1-2.  Defendant argues that the Court should dismiss this claim because it is administratively unexhausted and time-barred.  The undisputed facts on the record show that Plaintiff never brought these claims before the EEO. He did not seek counseling, file a complaint, or pursue the hearing process before an administrative judge.

Plaintiff's complete failure to begin or pursue the extensive administrative remedies established by Congress to resolve the Title VII claims of federal employees means that Claim Two is unexhausted.  Because Plaintiff failed to exhaust this claim, it is not properly before the Court.  *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (citing 42 U.S.C. § 2000e-5(f)(1)).  The Court will grant Defendant's Motion for Summary Judgment on Claim Two.

D.   <u>Claim Three</u>

In Claim Three, Plaintiff alleges that the USPS retaliated against him for his prior EEO action by failing to comply with a May 2003 directive to advise him of potential workers' compensation benefits issued by the DOL and by denying

18

him "continuation of pay" (COP) following his alleged placement on workers' compensation in September 1999. *Id.* at 8 ¶ 3.

The directive that Plaintiff refers to appears to be a May 1, 2003 letter to Plaintiff from a Ms. Klusky of the DOL. The letter discusses a review of the OWCP's decision to deny Plaintiff's request for COP. Def.'s Ex. 38. Attached to Ms. Klusky's letter is a Decision of the Hearing Representative "in the matter of the claim for compensation under Title 5, U.S. Code 8101 *et seq.* of Russell Bearden" (Decision). *Id.* at 2. It directed "the Office" to "advise the claimant of any ongoing benefit entitlement."

Defendant submits that "the Office" refers to the DOL's OWCP District Office, not the USPS. Thus, the Decision did not direct Defendant to take any action and Defendant cannot be liable to Plaintiff for failing to take such action. Defendant also argues that the only proper forum for challenging a denial of worker's compensation benefits is the OWCP, not the USPS or the federal district courts. 20 C.F.R. § 10.221 ("The final determination on entitlement to COP always rests with OWCP."); *see also id.* at § 10.205(b).

The Court finds that there is no genuine dispute of material fact as to whether the OWCP's Decision directed Defendant to take any action. The Decision was not directed at

19

Defendant and did not impose any obligations on Defendant.  The
Court will grant the motion for summary judgment on Claim Three.

     E.   <u>Claim Four</u>

     Finally, in Claim Four, Plaintiff alleges that he was
denied his "mandatory grievance right" to union representation at
a July 2, 1999, disciplinary hearing, in violation of his rights
under the rural carrier union agreement.  Compl. at 8 ¶ 4.

     Defendant argues that the Court should dismiss[4] this
claim because Plaintiff cannot complain to the USPS that his
union failed to represent him as allegedly required by the union
agreement.  It further submits that the union represented
Plaintiff through three stages of the grievance process, until it
determined that his claims had no reasonable likelihood of
success and deemed the grievance closed.  *See* Def.'s Ex. 33-34.

     It is doubtful that Plaintiff's allegations in Claim
Four state a claim against Defendant.  Even assuming that they
do, the Court will award summary judgment to Defendant on this
claim.  First, there is no genuine dispute of material fact on
the record regarding whether Plaintiff pursued the "grievance
process," as Defendant submitted evidence showing that Plaintiff
did use the grievance process to press his claims.  *See* Def.'s
Ex. 34, 35.  Nor is there any dispute that Plaintiff's union

---

    [4] The motion before the Court is Defendant's Motion for Summary
Judgment, however, Defendant employs the language of dismissal, rather than
summary judgment, when discussing Claim Four.

represented him, as the evidence shows that Plaintiff's union was involved in the grievance process. *Id.*  Second, it is clear from these facts that Defendant did not violate any relevant rights that Plaintiff may have had.  For these reasons, the Court will grant summary judgment on Claim Four in favor of Defendant.

## IV.  Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment as to all claims in the Complaint.

An appropriate Order will issue.


February 12, 2009                 _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE